# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| KEVIN HANEFELD and MARIANNA HANEFELD, husband and wife and the marital community comprised thereof,<br><br>Appellants,<br><br>v.<br><br>KING COUNTY, a municipal corporation and/or a political subdivision,<br><br>Respondent. | No. 77314-3-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br><br><br>FILED: November 19, 2018 |

APPELWICK, C.J. — While riding his bike along the Sammamish River Trail, Hanefeld flew over the handlebars and tumbled down a hill, injuring himself. He sued the County, alleging that its negligence in maintaining the trail caused his injuries. He argues that the trial court erred by granting summary judgment in favor of the County, because he raised genuine issues of fact on his failure to warn claim. He asserts that his failure to warn claim should not be subject to the discretionary immunity doctrine. We affirm.

## FACTS

On July 21, 2013, Kevin Hanefeld and his wife were riding their bikes along the Sammamish River Trail (trail). After reaching Bothell Landing, they headed eastbound on the trail to return back to their car. When the two came upon some bollards, Hanefeld slowed down. The trail turns left and then downhill at the

bollards. At this time, Hanefeld's wife was riding in front of him, and a woman and two boys were riding in front of his wife.

The woman and two boys went through the bollards first. Hanefeld was about three to four bike lengths behind the four of them. He went through the bollards last. He passed the family on the left while going down the hill. Then, Hanefeld recalls suddenly flying over his handlebars and tumbling down the hill, causing injury. He does not recall what caused him to fly over his handlebars. He was vaguely aware that his handlebars were not in a straight position.

Hanefeld's wife was at the bottom of the hill, and heard him cry out for help. Another bicyclist came to Hanefeld's side to help him. His wife then called 911, and emergency medical technicians (EMTs) came to his aid. Notes by one of the EMTs state that Hanefeld said he "over-corrected while bicycling and went over the handlebars." Hanefeld does not recall having a conversation with a paramedic, but states that he was probably overcorrecting for something.

In the two or three years prior to the accident, Hanefeld had ridden the section of the trail where he fell about two to three times a year. He had previously come upon uneven asphalt where the accident occurred. He was also aware of bumps on that section of the trail, and had previously gone over bumps or cracks without any problems.

On July 15, 2016, Hanefeld and his wife sued King County (County), alleging that its negligence in maintaining the trail caused his injuries. Specifically, Hanefeld alleged that the County failed to use reasonable care in maintaining the

trail, and failed to warn him of dangerous trail conditions. Both Hanefeld and his wife claimed damages as a result of his injuries.[1]

The County successfully moved for summary judgment on the basis of discretionary governmental immunity. The trial court also found that there was "no evidence raising a material fact on failure to warn." Hanefeld appeals.

## DISCUSSION

Hanefeld argues that he raised genuine issues of material fact on his failure to warn claim. He asserts that those issues of fact did not involve basic policy decisions subject to discretionary governmental immunity.

We review summary judgment orders de novo, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate only when no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. Id. If a plaintiff "'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial,'" summary judgment is proper. Young v. Key Pharmaceuticals, Inc., 112 Wn.2d 216, 225, 770 P.2d 182 (1989) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)), overruled on other grounds by, 130 Wn.2d 160, 922 P.2d 59 (1996).

---

[1] In its brief, the County notes that Hanefeld's wife's claim for damages was dismissed in a separate summary judgment motion and not appealed. This separate motion and dismissal are not in the record before us.

I. Discretionary Immunity

In Evangelical United Brethren Church of Adna v. State, 67 Wn.2d 246, 255, 407 P.2d 440 (1965), our Supreme Court set forth a four-factor test to determine when discretionary immunity applies:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

The court held that "[i]f these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom." Id. Our Supreme Court has also held that discretionary immunity is a narrow doctrine, limited to "'discretionary'" acts, not "'ministerial'" or "'operational'" ones. Taggart v. State, 118 Wn.2d 195, 214, 822 P.2d 243 (1992) (quoting Evangelical, 67 Wn.2d at 254-55). In order for a decision to qualify as discretionary, the State must show that the decision was the outcome of a conscious balancing of risks and advantages. Id. at 214-15.

In Avellaneda v. State, 167 Wn. App. 474, 478, 273 P.3d 477 (2012), the plaintiffs sued the State, alleging that the Washington State Department of Transportation (WSDOT) negligently delayed constructing a cable barrier on SR

512, which would have prevented their crash. This court determined that WSDOT's priority programming decision excluding the State Route 512 project was entitled to discretionary immunity. Id. at 484. Applying the Evangelical factors, it determined: (1) the SR 512 project's priority involved a basic governmental policy, program, or objective; (2) WSDOT's systematic ranking of median barrier projects according to their cost/benefit ratios was essential to the realization of that policy; (3) WSDOT's collection of data about accident history and the cost of possible median barrier projects in order to rank potential projects required the exercise of basic policy evaluation, judgment, and expertise; and (4) WSDOT possessed the requisite authority to formulate the priority array. Id. at 482-83. This court also found that no evidence in the record suggested an unreasonable delay. Id. at 487.

Hanefeld does not dispute that the County's decisions about the timing of trail repairs were entitled to discretionary immunity. Accordingly, we affirm the trial court's ruling on the issue of duty to repair.

## II. Failure to Warn

Discretionary immunity does not apply to the negligent implementation of discretionary decisions. Avellaneda, 167 Wn. App. at 488. Hanefeld argues that the County's alleged failure to warn did not involve basic policy decisions subject to discretionary governmental immunity. He distinguishes this case from Avellaneda. Unlike the plaintiffs in Avellaneda, he does not argue that the County negligently delayed repairing the section of trail where he fell. Rather, he argues

that the County was negligent by failing to warn him of the trail's dangerous condition.

Hanefeld argues that he raised genuine issues of material fact on his failure to warn claim. He asserts that these facts raise inferences that could allow a jury to conclude that the County "failed in its duty to provide a reasonable [sic] safe roadway for users of the Sammamish River Trail."

A cause of action for negligence requires the plaintiff to establish (1) the existence of a duty owed, (2) breach of that duty, (3) a resulting injury, and (4) a proximate cause between the breach and the injury. Tincani v. Inland Empire Zoological Soc'y, 124 Wn.2d 121, 127-28, 875 P.2d 621 (1994). Proximate causation includes both cause in fact and legal causation. Ang v. Martin, 154 Wn.2d 477, 482, 114 P.3d 637 (2005). "Cause in fact" refers to a physical connection between an act and the injury. Id. Ordinarily, cause in fact is a question for the jury. Hartley v. State, 103 Wn.2d 768, 778, 698 P.2d 77 (1985). But, the court may decide this question as a matter of law "when the causal connection is so speculative and indirect that reasonable minds could not differ." Mehlert v. Baseball of Seattle, Inc., 1 Wn. App. 2d 115, 119, 404 P.3d 97 (2017).

In his deposition testimony, Hanefeld states that "something occurred" as he passed the family on his bike. He does not recall what the "initiating event" was. He recalls "suddenly flying over [his] handlebars and tumbling down the hill." But, he does not recall what caused him to fly over his handlebars. He also recalls that his "handlebars jerked." He does not recall what caused his handlebars to jerk. Hanefeld's wife was at the bottom of the hill when the accident occurred. She

6

did not testify that she witnessed the accident. There is no other testimony in the record from any witnesses.

About a week after the accident, Hanefeld and his wife took pictures of the trail. Hanefeld's wife testified at her deposition that she thought a root on the trail in one of the pictures caused Hanefeld's accident. She did not testify that she saw that specific root on the day of the accident.[2] She also testified that, about a week after the accident, Hanefeld told her that the roots on the trail caused the accident. She then stated, "If you're asking me did he say the root caused it, you know, I can't say that unequivocally [sic]." Hanefeld did not testify that a root caused his accident. And, his wife's testimony that he told her a root caused his accident is inadmissible to prove that it did. ER 801(c), 802.

Hanefeld cites three pieces of evidence to support his argument that he raised genuine issues of material fact. First, he cites a declaration from County employee Chris Erickson, showing that the stretch of trail where Hanefeld fell was the County's number one priority on the King County Parks Regional Trail System Surface Repair Program list. Second, he cites prior complaints from other bicyclists about the same stretch of trail. Third, he cites the fact that County

---

[2] Hanefeld's wife stated the following,

We know -- I think that that -- at that section and actually all through the trail, cyclists just have to be careful, because, I mean, a rock can throw you off. So in this particular case, I think that there were probably tree roots or something. It had to be fairly large, whatever, in order to throw him the distance that he was thrown.

When asked if she encountered any bumps, cracks, or uneven surface as she made her passing maneuver on the day of the accident, she stated that she did not remember.

7

employees had provided warnings of some bumps on the trail prior to his fall by spray painting them.[3] None of this evidence connects the condition of the trail at the accident site to Hanefeld's fall.

The only witness testimony in the record is from Hanefeld, and he does not know what caused him to fly over his handlebars. At his deposition, he was asked if he recalled going over the cracks or bumps shown in a picture of the trail. He did not recall going over the cracks or bumps. He was also asked if, while walking his bike up towards the bollards before his accident, he knew there were bumps and cracks on that portion of the trail. He answered "no." He did not testify about the condition of the trail at the time that he fell. Based on this evidence, a jury could only speculate as to whether the condition of the trail where Hanefeld fell caused his accident. Accordingly, Hanefeld failed to raise a genuine issue of material fact as to causation. The trial court properly granted summary judgment on the failure to warn issue.[4]

We affirm.

_Appelwick, C.J._

WE CONCUR:

_Chun, J._          _Mann, J._

---

[3] Hanefeld also cites the fact that, after his fall, the County placed warning signs. His cites to the record do not support this statement. But, even if they did, evidence of subsequent remedial measures would not be admissible to prove that the County was negligent. ER 407.

[4] Since Hanefeld does not prevail, his request for fees is denied.